Filed 9/11/14 unmodfied opinion attached

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| S.A., | D064097 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00098497-CU-PO-CTL) |
| JAN MAIDEN et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | |

THE COURT:

The opinion filed on August 21, 2014, is modified to add the following footnote at the end of the heading "FACTUAL AND PROCEDURAL BACKGROUND":

"The facts set forth in this opinion are based on N.A.'s declaration in support of her anti-SLAPP motion to strike S.A.'s complaint against her."

The pre-existing footnotes are renumbered accordingly.

There is no change in the judgment.

The petition for rehearing is denied.

McCONNELL, P. J.

Copies to:  All parties

Filed 8/21/14 Unmodified version

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| S.A., | D064097 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00098497-CU-PO-CTL) |
| JAN MAIDEN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

S.A., in pro. per., for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing and Daniel S. Agle for Defendant and Respondent Jan Maiden.

Plaintiff S.A. appeals a judgment entered in favor of defendants Jan Maiden and Does 1 through 50 (together Maiden), after the trial court granted her Code of Civil

Procedure[1] section 425.16 anti-SLAPP[2] motion to strike his complaint alleging causes of action against Maiden for malicious prosecution, abuse of process, and intentional infliction of emotional distress. On appeal, he contends the trial court erred by granting Maiden's anti-SLAPP motions because he established there was a probability he would prevail on his causes of action. [3]

### FACTUAL AND PROCEDURAL BACKGROUND

In 2002, N.A. and S.A. were married in India and soon thereafter moved to the United States. In 2005, they had a daughter, S. S.A. engaged in a pattern of physical and emotional abuse of N.A. that escalated during the course of their marriage.

On January 18, 2009, the day after an abusive incident, N.A. informed her family in India that she had decided to separate from S.A. When N.A. arrived home, S.A. was angry at her for informing her family about her decision. S.A. yelled at her, touched her breasts, and tried to unfasten her bra. N.A. screamed and told him to stop, which he did after first pushing her onto the bed. N.A. called police because she believed she would need their assistance to leave the home safely. The police arrived, questioned both of

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] "SLAPP" is an acronym for a strategic lawsuit against public participation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109 & fn. 1.)

[3] S.A. also appealed a separate judgment in favor of defendant N.A. after the trial court granted her anti-SLAPP motion to strike his complaint against her, but he subsequently dismissed his appeal of the judgment in N.A.'s favor. We refer to S.A. and N.A. by their initials. By doing so, we intend no disrespect to the parties.

them, and then arrested S.A. N.A. bailed him out of jail the following day. They reconciled after he promised to be a better husband and father.

In 2010, during N.A.'s recovery period following a gynecological procedure, S.A. continued to force her to have sex with him. He also threatened that he would not file her work visa extension if she did not have sex with him.

In April 2010, before N.A. and S.A. left on a trip to India, S.A. cancelled S.'s school enrollment against N.A.'s wishes. Shortly before leaving for the airport, he gave N.A. an envelope filled with papers and told her it contained all of their immigration documents. After arriving in India, S.A. left with a man whom he claimed was a friend. N.A. and S. stayed with N.A.'s parents for the entire trip. A few days later, N.A. began receiving abusive telephone calls and e-mails from S.A., who insisted she meet him alone to sign divorce papers his attorney had prepared. N.A. then checked the envelope given her by S.A. and found it did not contain any of her immigration documents. After N.A. refused to meet S.A. alone, he used increasingly abrasive language toward her. In one message to her, he stated: "My primary motive is to ruin your life." At about the same time, N.A. learned that S.A. had transferred all of the money from their joint bank account to his personal account.

*Domestic violence restraining orders*. In June 2010, after eventually obtaining alternate travel documents, N.A. was able to return to the United States. Fearing future abuse, N.A. filed a request for a domestic violence restraining order against S.A. in the San Diego County Superior Court. After obtaining an initial temporary restraining order from the court, N.A. retained attorney Jan Maiden to represent her in her requests for

subsequent restraining orders.  The court issued a series of amended temporary restraining orders and ultimately set a June 6, 2011, hearing date for N.A.'s request for a permanent restraining order.

At the June 6, 2011, hearing, N.A. withdrew her request for a permanent restraining order against S.A. and the trial court accepted her voluntary dismissal of that request.  Because N.A. had moved to Orange County and filed for legal separation, child custody, and child and spousal support in the Orange County Superior Court, she no longer believed a permanent restraining order against S.A. was necessary.

On June 29, 2011, S.A. filed an order to show cause (OSC) why he should not be awarded attorney fees and costs as sanctions against N.A. for her extensions of the temporary restraining order, which was based on false allegations, and her subsequent dismissal of her request for a permanent restraining order.  The trial court granted the motion, finding S.A. was the prevailing party, and awarded him $3,500 in attorney fees and costs.

*Complaint*.  On June 6, 2012, S.A. filed the instant complaint against N.A. and Maiden, alleging causes of action for malicious prosecution, abuse of process, and intentional infliction of emotional distress.  He alleged N.A. and Maiden, maliciously and without probable cause, initiated and actively maintained the domestic violence restraining orders against him.

N.A. and Maiden filed separate anti-SLAPP motions to strike the complaint against them.  On March 11, 2013, the trial court granted both motions.  Finding N.A.'s request for a domestic violence restraining order "presented a quintessential family law

4

issue," the court applied the holding of *Bidna v. Rosen* (1993) 19 Cal.App.4th 27 (*Bidna*) and concluded S.A. could not state a malicious prosecution cause of action against N.A. and Maiden for their actions in initiating and maintaining requests for the domestic violence restraining orders against him. The court also found the Civil Code section 47, subdivision (b), litigation privilege barred his causes of action for abuse of process and intentional infliction of emotional distress. The trial court entered separate judgments for N.A. and Maiden dismissing S.A.'s action against them. S.A. timely filed notices of appeal challenging each of those judgments.[4]

## DISCUSSION

### I

*Anti-SLAPP Motions*

Section 425.16, the anti-SLAPP statute, "provides for the early dismissal of certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420-1421 (*Robinzine*.) Section 425.16, subdivision (b)(1), provides:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, *unless* the court determines that the *plaintiff has established that there is a probability that the plaintiff will prevail on the claim*." (Italics added.)

---

[4]     As noted above, S.A. subsequently dismissed his appeal of the judgment in N.A.'s favor. As a result, we address only his appeal of the judgment in Maiden's favor.

"Consideration of a section 425.16 motion to strike involves a two-step process. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States [Constitution] or [the] California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] An anti-SLAPP motion must be denied ' "if the plaintiff presents evidence establishing a prima facie case which, if believed by the trier of fact, will result in a judgment for the plaintiff. [Citation.]" ' [Citation.] Only a minimal showing of merit is required." (*Robinzine*, *supra*, 143 Cal.App.4th at p. 1421.)

On appeal, we review a trial court's ruling on an anti-SLAPP motion de novo and determine independently whether the statute's requirements for the special motion to strike were satisfied. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325; *Robinzine*, *supra*, 143 Cal.App.4th at p. 1421; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929.)

II

*Malicious Prosecution Cause of Action*

S.A. asserts the trial court erred by finding his malicious prosecution cause of action was barred by the anti-SLAPP statute, arguing he established there was a probability he would prevail on that cause of action.

6

A

A malicious prosecution action arises from protected activity under the anti-SLAPP statute because it involves the filing and prosecution of an underlying lawsuit, or petition to the judicial branch, that allegedly was malicious. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735.) Section 425.16, subdivision (e), provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) *any written or oral statement or writing made before a* legislative, executive, or *judicial proceeding*, or any other official proceeding authorized by law, (2) *any written or oral statement or writing made in connection with an issue under consideration or review by a* legislative, executive, or *judicial body*, or any other official proceeding authorized by law . . . ." (Italics added.) Accordingly, "[b]y definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit." (*Jarrow Formulas*, at p. 735.) "The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215.) We conclude, as S.A. apparently concedes, that his malicious prosecution cause of action is based on N.A. and Maiden's protected activity of initiating and maintaining requests for domestic violence restraining orders, thereby satisfying the first prong of the anti-SLAPP statute. (§ 425.16, subds. (b)(1), (e).)

7

Having determined S.A.'s malicious prosecution cause of action satisfied the first prong of the anti-SLAPP statute, we now determine whether S.A. has satisfied the second prong by "establish[ing] that there is a probability that [he] will prevail on the claim." (§ 425.16, subd. (b)(1).) Alternatively stated, we determine whether S.A. presented evidence that, if believed by the trier of fact, would be sufficient to support a judgment in his favor. (*Robinzine*, *supra*, 143 Cal.App.4th at p. 1421.) In making our determination, we consider the pleadings and any supporting or opposing affidavits stating the facts on which the liability or defense is based. (§ 425.16, subd. (b)(2).)

To prevail on a cause of action for malicious prosecution, S.A. must prove he was previously sued on a claim initiated or continued by Maiden without probable cause and with malice, and pursued to a termination in his favor. (*Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 318; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965, 970; *Robinzine*, *supra*, 143 Cal.App.4th at p. 1422.) Malicious prosecution is a "disfavored" cause of action and the trend has been for courts to limit its expansion. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872; *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1571 (*Siam*).)

We conclude the trial court correctly ruled that S.A. did not make a prima facie case showing there was a probability he would prevail on his malicious prosecution cause of action against Maiden. We conclude the court correctly applied the holding in *Bidna* and found S.A. could not state a malicious prosecution cause of action against Maiden for her actions in initiating and maintaining N.A.'s requests for domestic violence restraining orders against him. In *Bidna*, the court applied the California Supreme Court's reasoning

8

in *Sheldon Appel* to establish a "bright-line rule" barring malicious prosecution causes of action arising out of family law proceedings. (*Bidna*, *supra*, 19 Cal.App.4th at pp. 29-30, 37-39.) *Bidna* held that "no malicious prosecution action may arise out of unsuccessful family law motions or OSC's." (*Id*. at p. 37.) *Bidna* cited four reasons for adopting that bright-line rule: (1) family law cases have a "unique propensity for bitterness" that makes it difficult to distinguish a truly malicious motion from an ordinary one; (2) family law courts have the unique ability or authority to swiftly discourage "litigious nonsense" or frivolous motions by imposing attorney fee awards as sanctions; (3) family law matters often require a special sensitivity and flexibility in crafting remedies and the threat of malicious prosecution liability would increase the risk for a family law litigant in seeking any particular remedy and decrease the likelihood of obtaining effective relief; and (4) malicious prosecution liability would raise malpractice insurance premiums for family law attorneys and indirectly make clients' access to attorneys more expensive. (*Id*. at pp. 35-36; see also *Siam*, *supra*, 130 Cal.App.4th at pp. 1571-1572.) Although the facts in *Bidna* involved underlying child custody motions, the court pronounced a rule precluding malicious prosecution actions that arise out of family law motions and OSC's. (*Bidna*, at p. 37.)

Except for the exception to *Bidna*'s general rule recognized in *Nicholson v. Fazeli* (2003) 113 Cal.App.4th 1091 (*Nicholson*), we agree with and adopt *Bidna*'s general holding and apply it to the circumstances in this case. We conclude a request for a domestic violence restraining order is a family law motion within the meaning of *Bidna*. First, the statutory scheme that authorizes such restraining orders, the Domestic Violence

Prevention Act (DVPA), is found in *Family Code* sections 6200 et seq. The DVPA's definition of "domestic violence" includes abuse perpetrated against a spouse, former spouse, cohabitant, former cohabitant, person with whom the respondent is having or has had a dating or engagement relationship, and a person with whom the respondent has had a child. (Fam. Code, § 6211.) Family Code section 6320 authorized the initial and subsequent amended temporary restraining orders issued by the trial court in this case. That statute provides:

> "The court may issue an ex parte order enjoining a party from . . . striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (Fam. Code, § 6320, subd. (a).)

The fact the DVPA authorizes restraining orders not only for the protection of persons traditionally considered "family members," but also persons who may not traditionally be considered "family members," does *not* preclude a request for a DVPA restraining order from constituting a family law motion within the meaning of *Bidna*. Second, requests for DVPA restraining orders are, in general, heard and decided by judges assigned to the *family law* divisions of the county superior courts, as in this case. Based on the DVPA's statutory scheme and practice, we conclude requests for domestic violence restraining orders pursuant to the DVPA are "family law motions" within the meaning of *Bidna*'s holding. In the circumstances of this case, the request by N.A. for an initial DVPA restraining order, and subsequent requests for extensions and/or amendments, against her husband, S.A., constitute family law motions within the meaning of *Bidna*.

10

Furthermore, the reasons *Bidna* cited for its holding apply equally to this case to provide support for our conclusion that S.A. is precluded from pursuing a malicious prosecution cause of action against Maiden. First, the DVPA generally applies where the victim has been abused, threatened, or harassed by a person who is a family member or has or had a close relationship with the victim. It is evident based on our consideration of numerous DVPA appeals that there is often extreme bitterness between the parties, making it difficult to distinguish a malicious DVPA restraining order request from an ordinary one. (*Bidna*, *supra*, 19 Cal.App.4th at p. 35.)

Second, family law courts are authorized to impose attorney fee awards as sanctions against persons who frivolously or maliciously and without probable cause request DVPA restraining orders. (Fam. Code, §§ 271, 6344; see § 128.7.) In fact, in this case the trial court awarded S.A. $3,500 in attorney fees and costs after N.A. voluntarily dismissed her request for a permanent restraining order. Family law courts have the unique ability or authority to swiftly discourage "litigious nonsense" or frivolous motions by imposing attorney fee awards as sanctions. (*Bidna, supra*, 19 Cal.App.4th at p. 35.)

Third, if malicious prosecution actions were permitted against persons who request DVPA restraining orders, there would be a "chilling effect" on the ability of victims of domestic violence and other abuse to obtain protective relief under the DVPA. (*Bidna, supra,* 19 Caal.App.4th at p. 35.) That disincentive to apply for protective relief would be contrary to the public policy underlying, and the legislative intent of, the DVPA. The DVPA provides: "The purposes of this division are to prevent the recurrence

11

of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code, § 6220.)

Finally, the imposition of malicious prosecution liability on family law attorneys representing victims of domestic violence based on their representation of victims who request DVPA restraining orders would logically increase the cost of malpractice insurance for family law attorneys and presumably make it more expensive for victims to obtain representation in those family law matters. (*Bidna, supra*, 19 Cal.App.4th at pp. 35-36.) Based on our consideration of *Bidna*'s reasons for barring malicious prosecution claims, we conclude those same reasons apply to the DVPA restraining orders requested by N.A., and her attorney Maiden, against S.A. in the circumstances of this case. We conclude both *Bidna*'s holding and reasoning support our conclusion that S.A. cannot state a malicious prosecution cause of action against Maiden for N.A.'s request, filed in the family law court, for the initial DVPA restraining order and N.A. and her attorney Maiden's subsequent requests for extensions, renewals, and/or amendments of the initial restraining order.

The case of *Nicholson, supra,* 113 Cal.App.4th 1091 is *not* apposite to this case and does not persuade us to reach a contrary conclusion. *Nicholson* involved postdissolution judgment proceedings based on the family court's retention of jurisdiction over property division and other matters. (*Id*. at p. 1094.) The former wife filed a complaint against the former husband's trust, a party to the dissolution proceedings, seeking declaratory relief and imposition of a constructive trust. (*Ibid*.) The trust filed a

12

cross-complaint against her, seeking possession of a vehicle and certain jewelry alleged to be trust property in her possession. (*Ibid.*) The cross-complaint was bifurcated from the dissolution proceedings and was subsequently voluntarily dismissed by the trust. (*Id.* at p. 1095.) The former wife then filed a malicious prosecution action against her former husband, the trustees of the trust, and their attorney. (*Id.* at pp. 1095-1096.) The trial court granted the trustees' demurrer and dismissed the malicious prosecution action against them. (*Id.* at p. 1096.)

*Nicholson* rejected the argument that *Bidna*'s holding and reasoning applied to bar the malicious prosecution action against the trustees and their attorney. (*Nicholson*, *supra*, 113 Cal.App.4th at pp. 1096-1099.) *Nicholson* stated: "While *Bidna*'s broad language may have suggested that no malicious prosecution cause of action could be based on any action that 'originate[d] in family law proceedings,' we decline to extend *Bidna*'s 'absolute bar' to otherwise ordinary civil pleadings alleging ordinary civil causes of action that, for whatever reason, 'originate in family law proceedings.' The cross-complaint filed by [the trustees' attorney] on behalf of [the trustees] allegedly at the direction of [the former husband] did not raise any family law issues. . . . The Trust's action was simply a civil action for possession of property alleged to be trust property and damages for the loss of trust property. Had this same pleading been separately filed in the superior court, there would be no question that it could support a malicious prosecution action . . . . The mere fact that the cross-complainants used the family division case number and that the cross-complaint was filed in the family division did not transform the Trust's ordinary civil action against [the former wife] into a family law

13

motion, OSC or other inherently family law proceeding." (*Id*. at pp. 1098-1099.)

*Nicholson* also concluded that *Bidna*'s reasons for an absolute bar against malicious prosecution claims did not apply to ordinary civil actions that originate in family law proceedings. (*Nicholson,* at p. 1099.) *Nicholson* held the trial court erred by sustaining the defendants' demurrer to the malicious prosecution action. (*Ibid*.)

We conclude *Nicholson* is inapposite to this case. Unlike the civil action for possession of property and damages involved in that case, the underlying motions in this case were requests for the initial DVPA restraining order and subsequent extensions, renewals, and/or amendments. As we discussed above, DVPA restraining order proceedings are family law proceedings over which the family law divisions of the superior courts have jurisdiction. Therefore, they are not "ordinary civil actions" that may merely originate in the family court. *Nicholson*'s reasoning does not persuade us to reach a contrary conclusion.

Our conclusion is further supported by other cases applying *Bidna*'s holding and/or reasoning to bar malicious prosecution actions against persons who request restraining orders pursuant to statutory schemes other than the DVPA. In *Siam*, the court applied the reasoning of *Bidna*, *Sheldon Appel*, and *Pace v. Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476, 479 [barring malicious prosecution actions arising out of small claims actions], and concluded malicious prosecution actions cannot be based on an unsuccessful civil harassment petition under section 527.6. (*Siam*, *supra*, 130 Cal.App.4th at pp. 1567, 1571-1574.) *Siam* held the trial court erred by denying the

14

defendant's anti-SLAPP motion to strike the malicious prosecution claim against him. (*Id*. at p. 1574.)

Following *Siam*'s reasoning (based, in part, on *Bidna*'s reasoning), *Robinzine* similarly concluded malicious prosecution claims cannot be based on an unsuccessful workplace harassment petition under section 527.8. (*Robinzine*, *supra*, 143 Cal.App.4th at pp. 1419, 1422-1424.) *Robinzine* stated:

> "Given the substantial similarity between petitions under section 527.6 and section 527.8, the reasoning of *Siam* applies equally to both statutes. As we have noted, section 527.8 was enacted to allow employers to seek protections comparable to those offered under section 527.6 to enjoin workplace threats or acts of violence against employees. [Citations.] Both statutory schemes describe a streamlined process for obtaining a temporary restraining order and preliminary injunction. [Citations.] Both envision self-representation by parties without the benefit of counsel, and exempt the process from filing fees. [Citations.] They contain similar provisions concerning notification, enforcement and the consequences of any order obtained in the proceedings. [Citations.] . . . Moreover, a prevailing defendant in an action filed under section 527.8 has available sanctions that can be obtained within the proceeding to redress baseless or harassing allegations. (See § 128.7.)" (*Robinzine*, *supra*, 143 Cal.App.4th at pp. 1423-1424, fn. omitted.)

The court held the trial court erred by denying the defendants' anti-SLAPP motion to strike the malicious prosecution claim against them. (*Robinzine*, *supra*, 143 Cal.App.4th at p. 1424.)

We conclude the basic statutory schemes of, and the public policies and legislative intents underlying, the DVPA and sections 527.6 and 527.8 are sufficiently similar to require a result in this case similar to *Siam* and *Robinzine*. All three statutory schemes provide expedited and simplified procedures for victims of violence, abuse, and

15

harassment to obtain temporary and permanent restraining orders to protect them. Furthermore, because the DVPA is contained in the Family Code and not in the Code of Civil Procedure (as are §§ 527.6 and 527.8) and intends to help protect victims who are family members of, or who have or had close relationships to, the alleged abuser, *Bidna*'s reasoning applies more directly to a DVPA case, such as this case, than to the statutory schemes authorizing other restraining orders against violence, abuse, and harassment (i.e., §§ 527.6 and 527.8). *Siam* and *Robinzine*'s holdings provide additional support for our conclusion.

Because we have concluded *Bidna*'s holding and reasoning apply to bar S.A.'s malicious prosecution claim against Maiden, and similar restraining order cases (i.e., *Siam* and *Robinzine*) support our conclusion, we independently conclude S.A. has not, and cannot, establish there is a probability he will prevail on his malicious prosecution cause of action. Based on S.A.'s failure to make a prima facie case on that second prong of section 425.16, subdivision (b)(1)'s requirements, we conclude the trial court correctly granted Maiden's anti-SLAPP motion to strike his malicious prosecution cause of action against her.

III

*Abuse of Process Cause of Action*

S.A. contends the trial court erred by granting Maiden's anti-SLAPP motion to strike his abuse of process cause of action, arguing he established there was a probability he would prevail on that claim.

16

A

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed. [Citations.] It has been 'interpreted broadly to encompass the entire range of "procedures" incident to litigation.' [Citation.] [¶] '[T]he essence of the tort [is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice.' [Citation.] To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).)

*Bidna* described the difference between abuse of process and malicious prosecution, stating:

> "Abuse of process is not just another name for malicious prosecution. *Simply filing or maintaining a lawsuit for an improper purpose* (such as might support a malicious prosecution cause of action) *is not abuse of process*. [Citation.] [¶] Malicious prosecution and *abuse of process* are distinct. The former concerns a meritless lawsuit (and all the damage it inflicted). The latter *concerns the misuse of the tools the law affords litigants once they are in a lawsuit* (regardless of whether there was probable cause to commence that lawsuit in the first place). Hence, abuse of process claims typically arise for improper or excessive attachments [citation] or improper use of discovery [citation]." (*Bidna*, *supra*, 19 Cal.App.4th at p. 40, italics added.)

The California Supreme Court stated: "[T]he *mere filing or maintenance of a lawsuit*—even for an improper purpose—*is not a proper basis for an abuse of process action*." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*

17

(1986) 42 Cal.3d 1157, 1169, italics added.)  Alternatively stated, neither the initiation of a meritless claim nor the continued prosecution of a claim after it becomes apparent the claim is meritless can support an abuse of process cause of action.  (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 520.)  Such conduct may support a malicious prosecution cause of action, but not one for abuse of process.  (*Ibid*.)  In *Ramona*, we concluded: "[C]ontinued pursuit of meritless litigation for an improper collateral purpose, although actionable under malicious prosecution principles, is not separately actionable under an abuse of process theory."  (*Id*. at p. 521.)

B

Considering the first prong of the anti-SLAPP requirements, we incorporate our discussion regarding malicious prosecution above and conclude an abuse of process claim likewise involves protected activity under section 425.16.  Therefore, the first anti-SLAPP prong is satisfied.

Regarding the second prong, we conclude S.A. has not established there is a probability he will prevail on his abuse of process cause of action.  The gravamen of his abuse of process claim is that N.A. and her attorney Maiden initiated and maintained meritless DVPA restraining order proceedings for malicious purposes.  He does *not* allege any *misuse* of process, or the tools of the law, in the course of maintaining those allegedly meritless DVPA proceedings.  S.A.'s claim is for malicious prosecution and not abuse of process.  (*Rusheen*, *supra*, 37 Cal.4th at p. 1056; *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, *supra*, 42 Cal.3d at p. 1169; *Ramona Unified School Dist. v. Tsiknas*, *supra*, 135 Cal.App.4th at pp. 520-521; *Bidna*, *supra*, 19

18

Cal.App.4th at p. 40; *Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 532 [alleged malicious filings of meritless motions "are not actionable [as abuse of process] because there was no subsequent misuse of process and therefore no actionable wrong is alleged."].) However, as we discussed above, S.A. cannot state a malicious prosecution claim in a DVPA case, such as this case. Based on S.A.'s failure to make a prima facie case on that second prong of section 425.16, subdivision (b)(1)'s requirements, we conclude the trial court correctly granted Maiden's anti-SLAPP motion to strike his abuse of process cause of action against her.[5]

IV

*Intentional Infliction of Emotional Distress Cause of Action*

S.A. contends the trial court erred by granting Maiden's anti-SLAPP motion to strike his cause of action for intentional infliction of emotional distress (IIED), arguing he established there was a probability he would prevail on that claim.

Regarding the first prong of the anti-SLAPP requirements, we incorporate our discussion regarding malicious prosecution above and conclude S.A.'s IIED cause of action for emotional distress caused by N.A. and her attorney Maiden's initiation and

---

[5] By so concluding, we need not address alternative reasons for barring S.A.'s abuse of process claim. Nevertheless, we note that because the gravamen of S.A.'s claim is the initiation and maintenance of DVPA restraining order proceedings, the litigation privilege under Civil Code section 47, subdivision (b), would also likely apply to bar his abuse of process claim. (Civ. Code, § 47, subd. (b) ["A privileged publication or broadcast is one made: [¶] . . . [¶] [i]n any . . . judicial proceeding"]; *Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1429-1430; *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770 [initiation and maintenance of action were protected by the litigation privilege].)

19

maintenance of the DVPA proceedings likewise involved protected activity under section 425.16. Therefore, the first anti-SLAPP prong is satisfied.

Considering the second prong, we conclude S.A. has not established there is a probability he will prevail on his IIED cause of action. The gravamen of his IIED claim is that N.A. and her attorney Maiden intentionally initiated and maintained meritless DVPA restraining order proceedings with an intent to cause him emotional distress and that such conduct was extreme and outrageous. However, as many cases have concluded, the litigation privilege under Civil Code section 47, subdivision (b), bars IIED claims arising out of litigation conduct. (See, e.g., *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 341; *Rusheen*, *supra*, 37 Cal.4th at p. 1063 ["modern public policy seeks to encourage free access to the courts and finality of judgments by limiting derivative tort claims [i.e., IIED claims] arising out of litigation-related misconduct and by favoring sanctions within the original lawsuit]"]; *Silberg v. Anderson* (1990) 50 Cal.3d 205, 215 [litigation privilege has "been held to immunize defendants from tort liability based on theories of . . . [citations] intentional infliction of emotional distress"]; *Rosenthal v. Irell & Manella* (1982) 135 Cal.App.3d 121, 125; *Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 579; *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 640-641; *Agostini v. Strycula* (1965) 231 Cal.App.2d 804, 808.) Civil Code section 47, subdivision (b), protects communications made "[i]n any . . . judicial proceeding." In this case, because the alleged wrongful conduct did "not involve any action *outside of ordinary court proceedings* [citation] calculated to humiliate or inflict emotional distress" (*Bidna*, *supra*, 19 Cal.App.4th at p. 39), the litigation privilege under

20

Civil Code section 47, subdivision (b), applies to bar S.A.'s IIED cause of action against Maiden. S.A. has not established there is a probability he will prevail on his IIED cause of action. Based on his failure to make a prima facie case on the second prong of section 425.16, subdivision (b)(1)'s requirements, we conclude the trial court correctly granted Maiden's anti-SLAPP motion to strike his IIED cause of action against her.

V

*Conclusion*

Because S.A. did not establish there is a probability he will prevail on any of his three causes of action against Maiden, we conclude the trial court correctly granted her anti-SLAPP motion to strike those causes of action against her. The court properly entered the judgment in her favor.

DISPOSITION

The judgment is affirmed. Maiden is entitled to costs on appeal.



McDONALD, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.


21