Filed 11/6/14  Alecse v. Moda CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ANN CLAUDIA ALECSE, | B245653 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. SQ005582 & SQ005701) |
| v. | |
| KEVIN MODA, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Daniel J. Cowan, Judge.  Affirmed.

Michael Shemtoub; Kevin Moda, in pro. per, for Defendant and Appellant.

Linda S. Gross for Plaintiff and Respondent.

\* \* \* \* \* \*

Following an extensive, multi-day hearing, the trial court concluded that Kevin Moda (Moda) had committed multiple acts of domestic violence against Anne Claudia Alecse (Alecse), and entered a five-year restraining order under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.).[1]  Moda raises numerous challenges to this order.  Determining there is no cause for reversal, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Alecse and Moda began dating, and soon thereafter moved in together.  After a time, Moda began to threaten Alecse verbally, and to call or text her repeatedly at work with words that visibly upset her.  Moda also became physically abusive.  While angry with Alecse, he choked one of her two dogs and broke the other's back.  Moda physically restrained Alecse, shoved her, and pushed her into a wall hard enough to leave bruises.  Just over a year after they began dating, Moda used his closed fist to punch Alecse in the stomach at a nightclub; a month later, he threw an orange juice container at her and her friends.  When Alecse broke off the relationship and asked him to stay away, Moda continued to call her and her family members.

Alecse applied for a domestic violence restraining order against Moda using the standard DV-100 application form in June 2012.  Moda responded by denying Alecse's allegations, and by filing applications for domestic violence restraining orders against Alecse and her then-current boyfriend.[2]

The parties twice stipulated that a commissioner could hear the matters.  Moda then sought to depose Alecse and others, and to subpoena records from Alecse, AT&T and Sunset Entertainment Group.  The trial court quashed the deposition subpoenas on the ground that there was no right to pretrial discovery in connection with DVPA restraining order proceedings, but denied the motions to quash the subpoenas for the production of documents at the evidentiary hearing.

---

[1]  Unless otherwise indicated, all further statutory references are to the Family Code.

[2]  Although a court initially entered a temporary restraining order (TRO) against the boyfriend, the TRO was subsequently dissolved and the case ultimately dismissed.

As the hearing approached, Alecse retained counsel. Moda, by contrast, swapped one lawyer for another as his counsel of record, but the new lawyer never appeared; as a result, Moda ended up acting as his own counsel throughout the hearing.

The evidentiary hearing took place on seven days over two months. The court agreed to hear evidence on Alecse's petition and Moda's petition against Alecse simultaneously, but did not consolidate the two cases. Alecse called herself and two other people as witnesses, and Moda called himself. Two weeks in, Moda sought to disqualify the commissioner by (1) filing a preemptory challenge under Code of Civil Procedure section 170.6; (2) withdrawing his earlier stipulations to a commissioner; and (3) filing a verified statement of disqualification alleging the commissioner was biased. The court denied the Code of Civil Procedure section 170.6 challenge as untimely, and after filing a verified answer responding to Moda's statement of disqualification, struck his verified statement as untimely and as proffering no legal cause for disqualification.

At the end of the hearing, the trial court found that Alecse had proven "so many acts of domestic violence, the court could not list them in the next five minutes before the court has to close today, but they include a pattern of abuse over several years, intimidation." The court granted Alecse's petition,[3] and further found good cause to issue a five-year restraining order that (1) requires Moda to stay at least 100 yards away from Alecse; and (2) prohibits him from taking other, enumerated actions. The court also ordered Moda to complete a 52-week batterer's intervention program. Subsequently, the trial court denied Moda's request for a statement of decision, and granted Alecse's motion for attorney fees.

This appeal followed.[4]

---

[3]     The record does not reflect the trial court's denial of Moda's application, but Moda has not raised any claims relating to that order on appeal.

[4]     After Moda filed his opening brief, Alecse moved to augment the appellate record with a number of documents that were filed in this matter but omitted from the Appellant's Appendix. (See Cal. Rules of Court, rule 8.155(a)(1).) We deny the motion as untimely under rule 2(b) of the Local Rules of the Court of Appeal Second Appellate

Moda raises several challenges to the trial court's order. We address only those that were presented with "legal argument and citation to authority"; the others are waived. (*People v. Bryant, Smith & Wheeler* (2014) 60 Cal.4th 335, 363-364, citation and internal quotations omitted.)

## I.      Propriety of Commissioner

Moda advances two arguments why, notwithstanding his stipulations to the contrary, the commissioner had no authority to preside over the restraining order proceedings.

Moda first contends that because Alecse had a lawyer and he did not, California Rules of Court, rule 2.818(b)(3) entitles him to a new hearing. That rule prohibits an "attorney [from] serv[ing] as a court-appointed temporary judge . . . [¶] . . . [¶] [i]f, in a family law or unlawful detainer case, one party is self-represented and the other party is represented by an attorney or is an attorney." (Cal. Rules of Court, rule 2.818(b)(3).) But this rule applies only when *attorneys* serve as "temporary judge[s]," and not when *subordinate judicial officers* such as commissioners do. (Cal. Rules of Court, rule 2.810(a) ["[r]ules 2.810-2.819 . . . do not apply to subordinate judicial officers . . ."]; *id.*, rule 10.701(a) [commissioners are subordinate judicial officers].)

Moda next asserts that the trial court otherwise abused its discretion in not disqualifying itself. The only way to challenge disqualification rulings is by writ, not appeal. (Code Civ. Proc., § 170.3, subd. (d); *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 849-850 [Code Civ. Proc., § 170.6 peremptory challenges]; *PBA, LLC v. KPOD, Ltd.* (2003) 112 Cal.App.4th 965, 971 [disqualification challenges]; accord, *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1059 [same].) Indeed, Moda availed himself of writ review. (See *Moda v. Superior Court*, 2d Civil No. B244392

---

District, but on our own motion take judicial notice of the documents contained in the motion to augment. (See Evid. Code, §§ 452, subd. (d) & 459, subd. (a).)

[petition for writ of mandate denied Oct. 9, 2012].)  We are without jurisdiction to hear Moda's challenges in this appeal.

## II.     Discovery

Moda argues that the trial court erred in ruling that the DVPA does not afford litigants the full panoply of civil discovery rights, including the right to depose witnesses.  The trial court did not err.  Litigants do not have pre-trial discovery rights when litigating civil harassment restraining orders under Code of Civil Procedure section 527.6 because the expedited nature of such proceedings leaves "insufficient time in which to conduct discovery.  [Citation.]"  (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 650, fn. 11.)  The same is true for restraining order proceedings under the DVPA, which are also streamlined to ensure that victims of abuse can quickly obtain protection.  (*S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 40-41.)  Permitting pre-trial discovery would be inconsistent with this purpose.  Moda asserts that *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 compels a different conclusion.  *Elkins* held, as a matter of statutory construction, that oral testimony could not be categorically denied in marital dissolution and child custody trials.  (*Id.* at pp. 1345-1346.)  *Elkins* did not purport to lay down a blanket rule requiring full-blown pre-trial discovery in all Family Code proceedings.

## III.    Consolidation of Petitions

Moda contends that the trial court erred in consolidating *his* DVPA petition with Alecse's.  This argument lacks merit because the court never consolidated the two petitions; it just heard evidence for both simultaneously.  Moreover, the order the court issued was well within its power to control the proceedings before it.  (E.g., *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1377, 1378.)

## IV.    Sufficiency of the Evidence

Moda asserts that the evidence presented did not support the issuance of a restraining order.  Under the DVPA, a court may enter a restraining order lasting up to five years to prevent an occurrence or recurrence of domestic violence.  (§§ 6220, 6230, 6218, 6300, 6340, 6345; *Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079.)  The person seeking the order must prove, by a preponderance of the evidence, that his or her

5

safety would be jeopardized by the absence of an order.  (§ 6340, subd. (a); *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137; *In re B.S.* (2009) 172 Cal.App.4th 183, 194.) We review the trial court's issuance of a restraining order for an abuse of discretion, (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420), and the sufficiency of the evidence for substantial evidence (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631 (*Howard*)).

The evidence presented at the hearing was substantial, and the trial court did not abuse its discretion in issuing a restraining order.  As detailed above, Alecse and others testified to multiple incidents of Moda's physical violence and unwanted contact, and the trial court found Alecse to be credible.  This constitutes sufficient evidence.

Moda levels two attacks at the evidence.  First, he argues he presented a voicemail and declarations from persons who never witnessed him being violent with Alecse, but we must affirm if "there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment."  (*Howard, supra*, 72 Cal.App.4th at pp. 630-631.)  Alecse's evidence was substantial; that it was contradicted does not compel reversal.  Second, Moda asserts that there was insufficient evidence that he was in a "dating relationship" within the meaning of section 6210 because Alecse testified that she was dating him under threat of blackmail (rather than voluntarily).  This presents no bar because the DVPA also allows relief against persons who, in the past, had been in a dating relationship or had cohabitated (§ 6211), and the evidence was uncontradicted that Moda and Alecse had in the past voluntarily dated and lived together.

## V.  Evidentiary Rulings

Moda challenges several of the trial court's evidentiary rulings.  His challenges fall into two categories.

Most broadly, he contends that the trial court erred in allowing Alecse to present evidence and witnesses not referenced in her DV-100 application form.  He argues that section 217, subdivision (c) requires disclosure of a witness list in advance of hearings, and that introduction of evidence regarding incidents not enumerated in the form constitutes an impermissible amendment of a pleading to conform to proof.  We are

6

unpersuaded. Nothing in section 6340, subdivision (a) or any other DVPA statute limits an applicant's proof at a hearing to the witnesses identified or to the acts alleged in the DV-100 form application; indeed, the DV-100 does not even require applicants to list their potential witnesses. Moda also presents no authority for his proposition that the DV-100 form is a "pleading" in the traditional sense. As explained above, DVPA restraining order proceedings are expedited, and use modified procedural rules. We decline Moda's invitation to import, wholesale, all of the requirements antecedent to non-expedited Family Code litigation into the DVPA context when doing so will entail formal notices, motions to amend, and other filings that will inject delay into a proceeding for which time is of the essence.

Moda also challenges a host of evidentiary rulings, including the admission of testimony from witnesses not identified in the restraining order application, and the exclusion of declarations from non-testifying individuals and AT&T phone records. He also challenges the trial court's overruling his objections to most of Alecse's counsel's questioning and sustaining objections throughout his cross-examination of Alecse, and ultimately imposing a time limit on his questioning. We review these challenges for an abuse of discretion (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335), but they require reversal only if the evidentiary errors, if corrected, would make a different result reasonably probable (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480; see also Cal. Const., art. I, § 13; Evid. Code, § 353, subd. (b)). Moda has not carried his burden of showing that the errors he cites have prejudiced him. (*Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 58.) As noted above, Alecse presented evidence that Moda punched her in the stomach, threw juice on her, and threatened to kill her; Moda did not object to this evidence. It is not reasonably probable the trial court would have reached a different result had it admitted testimony from individuals who averred they had not observed violence between Moda and Alecse, or records offered to support Moda's theory that Alecse's new boyfriend was behind her testimony. Nor has Moda established how the trial court's restricting his

7

objections and questioning prejudiced him. Because Moda suffered no prejudice from the trial court's evidentiary rulings, none affords a basis for reversal.

## VI. Statement of Decision

Moda argues that the trial court erred in not issuing a written statement of decision. The court provided an oral statement of decision at the conclusion of the multi-day hearing, but initially denied as untimely Moda's request for a written statement. Three days later, the trial court issued a minute order giving Moda 10 days to file and serve a written request for a written statement of decision that specified the controverted issues. Moda filed a request 17 days later.

A party is entitled to a written statement of decision if he makes a timely request and specifies the issues he wants the statement to address. (Code of Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(d); *Staten v. Heale* (1997) 57 Cal.App.4th 1084, 1091 [absent timely request, no duty to prepare a written statement of decision].) When a hearing lasts more than one day, a request is timely if made within 10 days after the court announces its tentative ruling. (Code of Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(d).) Moda did not follow these procedures. Moda's initial, oral request did not specify any controverted issues, and was for that reason defective. (*Conservatorship of Hume* (2006) 140 Cal.App.4th 1385, 1394 [party must "identify *specifically* which issues he wanted the trial court to address"].) Moda's written request was untimely: It was due within 10 days of the court's minute order; even assuming that minute order was mailed and Moda had an additional five days, (Code of Civ. Proc., § 1013), Moda filed his written demand more than 15 days after the minute order issued. The trial court accordingly committed no error in declining to produce a written statement of decision.

## VII. Attorney Fees

Moda challenges the trial court's award of attorney fees to Alecse on the grounds that (1) she did not check the box on the DV-100 form indicating she was seeking such fees; and (2) the trial court should not have awarded fees for the work of attorney Sam Israels (Israels) because Alecse never retained him or otherwise became liable for his

8

fees. We review the trial court's award for an abuse of discretion. (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1509).

The trial court did not abuse its discretion in allowing Alecse to seek fees. When Alecse filed her DV-100 form, she was not represented by counsel, so had no reason to check the box seeking attorney fees. However, Alecse notified Moda and the court of her intention to seek attorney fees after retaining counsel and three months before the court's ruling on fees. This gave Moda ample notice, and he appeared at the hearing on fees to oppose Alecse's request. This satisfied the DVPA, which permits the award of attorney fees "[a]fter notice and a hearing." (§ 6344, subd. (a).)

The trial court also did not abuse its discretion in awarding fees for Israels' work. Although a litigant, in many cases, may only recover attorney fees she is *liable* to pay (e.g., *Flannery v. Prentice* (2001) 26 Cal.4th 572, 579), that requirement is met here. Israels averred that Alecse "incurred" "fees" of $14,662.52, and the authority Moda cites acknowledges that "[t]o 'incur' a fee . . . is to 'become liable' for it." (*Trope v. Katz* (1995) 11 Cal.4th 274, 280.) Moda suggested that Israels was working for free or in exchange for a "good loan" from Alecse's employer, but the trial court was within its discretion to credit Israels' declaration over Moda's suggestions. Nor do we find any merit to Moda's claim that Israels' fee request in the case involving Alecse's new boyfriend limited the trial court's discretion to award fees here.

## DISPOSITION

The domestic violence restraining order filed October 26, 2012, and the February 11, 2013 award of attorney fees and costs are affirmed.  Alecse is entitled to recover her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.

HOFFSTADT

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

10