[No. H023828. Sixth Dist. Dec. 1, 2003.]

TINA NICHOLSON, Plaintiff and Appellant, v.
SAID FAZELI, et al., Defendants and Respondents.

**COUNSEL**

James S. Link, John C. Carpenter and Greg O'Hara for Plaintiff and Appellant.

Raymond Coates for Defendant and Respondent Said Fazeli.

Jane A. Corning for Defendant and Respondent R. W. Litherland.

Jesse F. Ruiz for Defendants and Respondents Polad Fazeli and Piruz Fazeli.

**OPINION**

**MIHARA, J.**—After a trust was joined in a dissolution action by stipulation of the parties and the wife filed a complaint against the trust in the dissolution action seeking to impose a constructive trust and seeking declaratory relief, the trust filed a cross-complaint against both husband and wife. The cross-complaint sought possession of personal property in wife's possession that was alleged to be trust property, or alternatively, damages for the loss of that property from the trust. The cross-complaint was bifurcated from the dissolution action and set for trial, but the trust voluntarily dismissed its cross-complaint before trial. Wife sought attorney's fees, costs and sanctions against husband, the trust and the trustees in the dissolution action. She obtained fees, costs and sanctions against husband and the trust, but was denied fees, costs or sanctions against the trustees on the ground that they were not parties to the dissolution action. An arbitrator later found that the property sought by the trust belonged to wife. Wife then filed a malicious prosecution action against husband, the trustees and the trust's attorney,

alleging that the cross-complaint had been maliciously prosecuted without probable cause. This action was dismissed by the superior court on demurrer and motions for judgment on the pleadings. Wife challenges the dismissal.

We address two questions in this appeal. First, may a cross-complaint originating in a dissolution action form the basis for a malicious prosecution action? We conclude that, under the circumstances of this case, it may. Second, was wife's malicious prosecution action precluded by the family court's prior ruling on her motion for attorney's fees and costs? We determine that her malicious prosecution action was not precluded by the prior ruling. Accordingly, we reverse the judgment.

## I. Background

Plaintiff Tina Nicholson and defendant Said Fazeli[1] married in 1989 and separated in 1996. Nicholson filed a dissolution action in February 1996. By stipulation of the parties, the "Said Fazeli 1979 Trust" (the Trust) was joined as a party in the dissolution action. A judgment of dissolution was entered in October 1996, but the court retained jurisdiction over property division, spousal support and attorney's fees.

In March 1997, Nicholson filed a complaint against the Trust in the dissolution action seeking declaratory relief and imposition of a constructive trust. She asserted that the Trust's assets were relevant to issues in the dissolution action involving the determination of the marital standard of living, spousal support and attorney's fees. Nicholson also noted that the Trust held title to the Jaguar she possessed. She alleged that assets claimed to be Trust property were actually either Said Fazeli's personal property or her own separate property.

An April 1997 court order temporarily partially removed Said Fazeli as trustee of the Trust and replaced him with his sons Polad and Piruz Fazeli as trustees ad litem for the sole purpose of defending the Trust against Nicholson's complaint. In June 1997, R.W. Litherland, acting as the attorney for Polad and Piruz Fazeli filed a cross-complaint in the dissolution action against Nicholson and Said Fazeli seeking possession of the Jaguar in Nicholson's possession or damages for the loss of its value and seeking a constructive trust on 23 pieces of jewelry, including Nicholson's engagement ring, alleged to be Trust property in Nicholson's possession. Nicholson, in

---

[1] The record reflects two different spellings of this defendant's name. Sometimes it is spelled Saeed and other times Said. Since Nicholson's complaint utilizes the Said spelling, we will use that spelling here. By doing so, we mean no disrespect to this defendant if this spelling is incorrect.

turn, filed a cross-complaint in August 1997 against Said Fazeli for declaratory relief and indemnification with respect to the Trust's cross-complaint. She also "replaced her complaint" with a petition seeking a determination of the character of the Trust and of her property rights.

In February 1999, the Trust filed a motion seeking bifurcation of the cross-complaint from the "divorce proceedings." In April 1999, the motion was granted, and the "matter referred for settlement conf. and trial." In June 1999, Nicholson was notified of September 1999 dates for a settlement conference and a trial in "Department 74" of the "Family Division" of the superior court. Litherland ceased to represent the Fazeli brothers and the Trust in November 1999. In January 2000, the Trust voluntarily dismissed its cross-complaint without prejudice. The dismissal was entered by the judge handling the dissolution action in the "Family Division."

In January 2000, Nicholson filed a motion in the dissolution action seeking attorney's fees and costs under Family Code sections 271 and 2030 from Said Fazeli, Polad and Piruz Fazeli and the Trust. She alleged that she had incurred a total of $184,441.78 in attorney's fees and costs in the dissolution action including "over $137,000" in fees and costs incurred in "either" defending against the cross-complaint or prosecuting her complaint against the Trust. Nicholson asserted that the Fazelis, the Trust and Litherland had filed and prosecuted a frivolous cross-complaint out of spite.

In March 2000, the judge in the dissolution action awarded Nicholson $50,000 in attorney's fees and costs under Family Code sections 271 and 2030 against Said Fazeli and the Trust. The judge denied her request that Polad and Piruz Fazeli should be ordered to pay her fees and costs on the ground that Polad and Piruz Fazeli "apparently acted [only] as trustees" and "have never been joined as [individuals as] parties to this action." After an arbitration between Said Fazeli and Nicholson in the spring of 2000, an arbitrator ruled that the Jaguar and the jewelry belonged to Nicholson.

In October 2000, Nicholson filed a malicious prosecution action against Said, Polad and Piruz Fazeli and Litherland.[2] She alleged that the cross-complaint filed by Litherland on behalf of Polad and Piruz Fazeli against her and Said Fazeli had been procured by Said Fazeli and that they lacked probable cause for their allegations in the cross-complaint. Nicholson alleged that she incurred over $184,000 in attorney's fees and costs defending against the cross-complaint. Nicholson sought compensatory and punitive damages.

---

[2] Nicholson originally included the Trust as a defendant, but she dismissed the Trust as a defendant after its demurrer was sustained with leave to amend. A judgment of dismissal was thereafter entered in favor of the Trust.

The Fazelis filed motions for judgment on the pleadings, and Litherland joined in their motions. Nicholson opposed their motions and filed a request for judicial notice that asked the court to take judicial notice of "the fact" that the "birfurcated portion of the [family court] action related to the cross-complaint was transferred from Family Law Division Department 74 to General Civil Division 67 for trial." In July 2001, the superior court granted her judicial notice request. Nevertheless, the court granted the motions for judgment on the pleadings with leave to amend.

In August 2001, Nicholson filed an amended complaint very similar to her original complaint except that she alleged that the bifurcated cross-complaint had been set for trial "to be held outside the Family Law Court, and placed on the Santa Clara County Superior Court Civil Law Division Calendar . . . ." (Original underscoring.) Said Fazeli filed a "Motion for Judgment on the Pleadings/Demurrer" to the amended complaint and Litherland joined in his motion. Polad and Piruz Fazeli filed a demurrer. The superior court sustained the demurrer without leave to amend, and it granted the motions for judgment on the pleadings without leave to amend. The court then entered judgment dismissing the action. Nicholson filed a timely notice of appeal.

## II. Analysis

The primary issue presented in this appeal is whether a cross-complaint that originates in a dissolution action may form the basis for a malicious prosecution action. The Fazelis and Litherland rely heavily on *Bidna v. Rosen* (1993) 19 Cal.App.4th 27 [23 Cal.Rptr.2d 251] and *Begier v. Strom* (1996) 46 Cal.App.4th 877 [54 Cal.Rptr.2d 158] to support the proposition that any action that originates in a family law proceeding cannot form the basis for a malicious prosecution action. Nicholson, on the other hand, asserts that neither the holding in *Bidna* nor the holding in *Begier* precludes her action. The Fazelis and Litherland also claim that the res judicata effect of the family court's ruling on Nicholson's request for attorney's fees and costs in the family law proceedings precludes her from bringing an action for malicious prosecution.

### A. Malicious Prosecution Actions Arising From Family Law Proceedings

In *Bidna*, Rosen repeatedly filed meritless motions and orders to show cause (OSC's) seeking a change in child custody after Bidna was awarded custody of their daughter. Her motions and OSC's were funded by her wealthy mother who hoped to force Bidna to relinquish custody of his daughter. Bidna incurred over $200,000 in attorney's fees and costs in defense against these meritless motions and OSC's. He had no adequate family law remedy because

Rosen was judgment-proof and her mother was not a party to the dissolution action. (*Bidna v. Rosen, supra,* 19 Cal.App.4th at pp. 29–30.) His malicious prosecution action was dismissed, and he appealed.

The Fourth District began its analysis in *Bidna* by noting that "[t]he case law reveals an abiding judicial reluctance to entertain malicious prosecution actions which arise either out of motions or OSC's, or originate in family law proceedings." (*Bidna v. Rosen, supra,* 19 Cal.App.4th at p. 32.) The court then reviewed a series of cases holding that requests for admissions and OSC's in family law actions, and OSC's for contempt and motions to disqualify counsel in civil actions could not support malicious prosecution actions. (*Bidna* at pp. 32–34.) The rationale expressed in these cases was that motions or OSC's lacked "sufficient independence" to support a malicious prosecution action. (*Bidna* at pp. 32–34.) The Fourth District posed the question before it as whether there should be "an absolute bar of malicious prosecution claims based on *any* kind of family law motion or OSC." (*Bidna* at p. 34.)

The Fourth District discussed four reasons why malicious prosecution actions should be barred for any family law motion or OSC. First, due to the bitterness inherent in many family law cases, it could be "extremely difficult to distinguish truly 'malicious' motions and OSC's from ordinary ones." (*Bidna v. Rosen, supra,* 19 Cal.App.4th at p. 35.) Second, the family law courts had the ability to control "litigious nonsense" by imposing attorney's fees awards as sanctions against a party's conduct. (*Bidna* at p. 35.) Third, allowing malicious prosecution actions might improperly deter a party to a family law case from filing a meritorious motion or OSC, and this would be particularly hazardous where child custody was at issue. (*Bidna* at p. 35 [23 Cal.Rptr.2d 251].) Finally, the availability of malicious prosecution actions would raise malpractice insurance premiums for family law lawyers. (*Bidna* at pp. 35–36.)

Against these reasons, the Fourth District balanced the inadequacy of the remedies available to Bidna due to the fact that the instigator of the malicious motions and OSC's, his mother-in-law, was not a party and Rosen, who was a party, was judgment-proof. (*Bidna v. Rosen, supra,* 19 Cal.App.4th at p. 37.) The Fourth District decided that "no malicious prosecution action may arise out of unsuccessful family law motions or OSC's" because the "tie breaker" in this balancing was the "basic judicial policy in favor of curing the evil of abusive litigation at its source rather than allowing it to metastasize into yet more litigation." (*Bidna* at p. 37.)

Although the issue before the Fourth District in *Bidna* involved OSC's and motions brought in an ongoing family law proceeding, the court at times characterized the issue more broadly as whether malicious prosecution "cover[s] family law cases" or "abusive family law proceedings" or may "originate in family law proceedings." (*Bidna v. Rosen, supra,* 19 Cal.App.4th at pp. 32, 35-36, 38, 39.)

In *Begier v. Strom, supra,* 46 Cal.App.4th 877, the malicious prosecution cause of action was based on false allegations of child molestation made by the wife against the husband in the course of child custody proceedings in their dissolution action. (*Begier* at p. 885.) After the family court rejected the molestation allegations, it denied the husband's request for sanctions. (*Begier* at pp. 885–886.) Based on *Bidna,* the trial court and the First District held that the husband could not maintain a malicious prosecution action based on the wife's false allegations of molestation in the dissolution action. (*Begier* at pp. 886–888.)

Our standard of review is de novo. "A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled." [Citation.] (*Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1114 [103 Cal.Rptr.2d 858]; *Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].) Here, the demurrer, the motions for judgment on the pleadings and Nicholson's opposition thereto were supported by requests for judicial notice of facts and documents, and the superior court granted all of the judicial notice requests. Therefore, we consider whether Nicholson's amended complaint, combined with the judicially noticed facts and documents, was sufficient to state a cause of action against the Fazelis and Litherland.

"To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608].) A malicious and meritless cross-complaint seeking affirmative relief, like a malicious and meritless complaint, is an "action" that may support a malicious prosecution cause of action because "a cross-pleading creates an action distinct and separate from an initial pleading." (*Bertero* at pp. 51–52.)

While *Bidna*'s broad language may have suggested that no malicious prosecution cause of action could be based on any action that "originate[d] in family law proceedings," we decline to extend *Bidna*'s "absolute bar" to otherwise ordinary civil pleadings alleging ordinary civil causes of action that, for whatever reason, "originate in family law proceedings." The cross-complaint filed by Litherland on behalf of Polad and Piruz Fazeli allegedly at the direction of Said Fazeli did not raise any family law issues. It did not

involve marital status, child custody or spousal support. Though the characterization of the property in question as Trust property might have had some impact on the division of community property, the Trust did not seek to characterize the property as community or separate property but rather as Trust property. The Trust's action was simply a civil action for possession of property alleged to be trust property and damages for the loss of trust property. Had this same pleading been separately filed in the superior court, there would be no question that it could support a malicious prosecution action under *Bertero*. The mere fact that the cross-complainants used the family division case number and that the cross-complaint was filed in the family division did not transform the Trust's ordinary civil action against Nicholson into a family law motion, OSC or other inherently family law proceeding.

The reasons given in *Bidna* for its "absolute bar" do not apply to an ordinary civil action that "originate[s] in a family law proceeding." Such a civil action is no more difficult to classify as "malicious" than any other civil action. (*Bidna v. Rosen, supra,* 19 Cal.App.4th at p. 35.) Nor does the availability of an award of attorney's fees and costs as a sanction in family law proceedings merit an absolute bar against a malpractice action based on a civil action that "originate[s] in family law proceedings." As the California Supreme Court has observed, the Legislature's enactment of provisions permitting a court to impose sanctions was not intended as a substitute for a malicious prosecution action. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 688–689 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) *Bidna*'s concern about deterring family law litigants from filing meritorious motions or OSCs is not present when the action in question is an ordinary civil action. (*Bidna, supra,* at p. 35.) And ordinary civil actions, even those that originate in family law proceedings, are ordinarily brought by civil attorneys, rather than family law attorneys, and therefore will not unduly affect the malpractice premiums for family law attorneys. (*Bidna* at pp. 35–36.)

Since none of *Bidna*'s reasons for its absolute bar apply to ordinary civil actions that "originate in family law proceedings," we conclude that it would be improper to apply its absolute bar on malicious prosecution actions to ordinary civil actions, such as this one, that originate in a family law proceeding.[3] The superior court's ruling cannot be upheld on this basis.

---

[3] Consequently, it is not necessary for us to consider whether Nicholson properly established that the cross-complaint was actually transferred out of the family division.

## B.  Res Judicata

The Fazelis and Litherland claim that the superior court's ruling may alternatively be upheld on the ground that res judicata bars Nicholson's malicious prosecution action. They asserted this claim below, but the superior court did not rule on it.

"The burden of proving that the requirements for application of res judicata have been met is upon the party seeking to assert it as a bar or estoppel." (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 257 [142 Cal.Rptr. 414, 572 P.2d 28].) Since this case is before us after the sustaining of a demurrer and the granting of motions for judgment on the pleadings, our standard of review is de novo. (*Leko v. Cornerstone Bldg. Inspection Service, supra,* 86 Cal.App.4th 1109, 1114; *Smiley v. Citibank, supra,* 11 Cal.4th 138, 146.) We must decide whether the Fazelis and Litherland established, based on Nicholson's amended complaint and the judicially noticed facts and documents, that her action was barred by the res judicata effect of the prior ruling on her motion for attorney's fees and costs.

"The doctrine [of res judicata] has a double aspect, a prior judgment is a bar in a new action on the same cause of action, and in a new action on a different cause of action the former judgment is a collateral estoppel, being conclusive on issues actually litigated in the former action." (*Lewis v. Superior Court* (1978) 77 Cal.App.3d 844, 851 [144 Cal.Rptr. 1].) This first aspect of the doctrine is often referred to as claim preclusion or res judicata while the second aspect of the doctrine is referred to as issue preclusion or collateral estoppel. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896, fn. 7 [123 Cal.Rptr.2d 432, 51 P.3d 297].) The Fazelis and Litherland assert that the claim preclusion aspect of res judicata applies here.

"For purposes of [claim preclusion] res judicata, California applies the primary right theory to define cause of action as: (1) a primary right possessed by the plaintiff, (2) a corresponding duty imposed upon the defendant, and (3) a wrong done by the defendant which is a breach of such primary right and duty. [Citation.] Thus, a single cause of action is based on the harm suffered, rather than on the particular legal theory asserted or relief sought by the plaintiff. [Citations.]" (*Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 991 [95 Cal.Rptr.2d 837], citations omitted.)

" 'The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation] . . . [¶] As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. It must therefore be distinguished from the *legal theory* on which liability for

that injury is premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." [Citation] The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." ' " (*Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 904.) "[W]here judgment is rendered for the *defendant* because the plaintiff has sought a remedy not available to him . . . the plaintiff is not necessarily precluded from bringing another proceeding to obtain a recovery which is available." (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 974 [104 Cal.Rptr. 42, 500 P.2d 1386].)

The parties do not cite, and we have not found, any cases addressing the question of whether a request for attorney's fees and costs under Family Code sections 271 and 2030 involves the same "primary right" as a malicious prosecution cause of action.

Family Code section 2030 permits a court to order "any party" to a dissolution action to pay the attorney's fees and costs of another party to the action where "reasonably necessary for . . . maintaining or defending the proceeding" if the parties' respective incomes, needs and ability to pay merit such award "in order to ensure that each party has access to legal representation to preserve all of the party's rights . . . ." (Fam. Code, § 2030, subd. (a).) "Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party." (Fam. Code, § 2030, subd. (d).)

An award of fees and costs under Family Code section 271 may be based on "the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (Fam. Code, § 271, subd. (a).) "An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (Fam. Code, § 271, subd. (a).) "An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property." (Fam. Code, § 271, subd. (c).)

Clearly the primary right intended to be vindicated by Family Code sections 271 and 2030 is the right of a party to a family law proceeding to an adequate opportunity to litigate, notwithstanding a disparity in the parties' income and assets. Indeed, Nicholson brought her motion while the dissolution action was still ongoing, and her need to litigate the dissolution issues continued to require her to pay for attorney's fees and costs. A malicious prosecution action, on the other hand, is brought to vindicate one's right to be free from malicious and unmeritorious litigation. The corresponding duties are also distinct. A party to a dissolution action has a duty, under Family Code section 2030, to provide funds for the party's adversary's litigation costs where the adversary's need and the party's means justify such a provision. The duty imposed by Family Code section 271 requires a party to a dissolution action to be cooperative and work toward settlement of the litigation on pain of being required to share the party's adversary's litigation costs. The duty involved in a malicious prosecution action, on the other hand, is the obligation to refrain from maintaining a malicious and unmerited lawsuit.

As both the primary rights and corresponding duties are different, Nicholson's malicious prosecution action was not barred by the claim preclusion aspect of res judicata. We are not convinced to the contrary by the argument that in both her family court motion and her malicious prosecution action Nicholson sought to recover the same amount of money she had expended for attorney's fees and costs. Nicholson's recovery on her family court motion was necessarily limited to the amount necessary to ensure her ability to pursue the family court litigation and restricted to an amount that would not impose a financial burden on the adverse party. No such restrictions are applicable to her malicious prosecution action. While her recovery on the motion may be an offset against any recovery on her malicious prosecution action, a prior ruling does not preclude a subsequent action where the remedy available in the subsequent action was not available in the prior action. (*Busick v. Workmen's Comp. Appeals Bd., supra,* 7 Cal.3d at p. 974.) Full compensation was not available to Nicholson in family court under Family Code sections 271 and 2030, but would be available in her malicious prosecution action.

Polad and Piruz Fazeli assert that they cannot be held liable because their cross-complaint was brought solely in their capacity as trustees of the Trust. We disagree. "[T]he trustee, rather than the trust, is the real party in interest in litigation involving trust property." (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1132, fn. 3 [69 Cal.Rptr.2d 317, 947 P.2d 279]; *Pillsbury v. Karmgard* (1994) 22 Cal.App.4th 743, 753 [27 Cal.Rptr.2d 491].) Since the cross-complaint was "litigation involving trust property," the trustees, Polad and Piruz Fazeli, were parties to that litigation and therefore could be held

liable for malicious prosecution of the cross-complaint. Whether the Trust must indemnify them is an issue not before us.

As Nicholson's action was not barred by res judicata, the superior court erroneously sustained the demurrer and granted the motions for judgment on the pleadings.

### III.   Disposition

The judgment is reversed. The superior court is directed to vacate its order sustaining the demurrer and granting the motions for judgment on the pleadings and to enter a new order overruling the demurrer and denying the motions for judgment on the pleadings. Nicholson shall recover her appellate costs.

Elia, Acting P. J., and Wunderlich, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 18, 2004. Chin, J., did not participate therein.