Filed 5/13/15  Marriage of Jones CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Marriage of KIMBERLY M. and FLETCHER JONES, JR.<br><br>KIMBERLY M. JONES,<br><br>    Respondent,<br><br>      v.<br><br>FLETCHER JONES, JR.,<br><br>    Appellant. | G049640<br><br>(Super. Ct. No. 12D000041)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Ronald P. Kreber, Judge.  Affirmed.

Seastrom & Seastrom, Philip G. Seastrom; Wasser Cooperman & Carter, Bruce Evan Cooperman; Greines, Martin, Stein & Richland, Robert A. Olson and Marc J. Poster for Appellant.

Kolodny Law Group, Stephen A. Kolodny, James L. Keane, Heidi L. Madzar; Steven E. Briggs; Snell & Wilmer and Richard A. Derevan for Respondent.

\*          \*          \*

Kimberly M. Jones filed an action to dissolve her marriage to Fletcher Jones, Jr.[1] In an earlier appeal, we held the trial court properly bifurcated the trial of the marital status from remaining issues. (*In re Marriage of Jones* (Jan. 10, 2014, G047724) [nonpub. opn.].) The issue presented in the present appeal is whether the trial court erred in awarding Kimberly pendente lite attorney fees to litigate the action Fletcher brought in Nevada for declaratory relief and specific performance of the terms of a prenuptial agreement, a marital settlement agreement, and a postmarital agreement previously entered into by the parties. The agreements require that any question of their validity be litigated in Nevada, applying Nevada law. The prenuptial agreement also provides the prevailing party in an action concerning the agreement is entitled to attorney fees. By the time the superior court granted Kimberly pendente lite attorney fees to litigate the Nevada matter, the Nevada court had already granted Fletcher *partial* summary judgment and awarded him attorney fees in connection with that portion of the Nevada case.

I

FACTUAL AND PROCEDURAL BACKGROUND

In July 1998, before they married, Fletcher and Kimberly were Nevada residents and entered into a prenuptial agreement in that state. The purpose of the prenuptial agreement was to "defin[e] their respective rights regarding pre-marital and post-marital property, acquisitions and rights." The agreement provided it was to be "governed by, interpreted, enforced and construed under and in accordance with the statutory and case laws of the State of Nevada." The prenuptial agreement also contained a clause requiring Fletcher to pay Kimberly $250,000 on each anniversary of their marriage prior to the filing of an action for divorce or dissolution of the marriage, and another provision providing that if Kimberly seeks to subsequently set aside or invalidate

_____

[1] For ease of reading, we refer to the parties by their first names.

2

the agreement, she must, as a condition precedent, reimburse Fletcher the amounts he paid her on their anniversaries.

Additionally, the agreement contained provisions regarding payment of attorney fees. Fletcher agreed to pay the attorney fees and costs of each party in negotiating and executing the prenuptial agreement. The contract provided that after their first anniversary, each party waived the right to seek pendente lite attorney fees in connection with litigating the validity of the agreement, and the prevailing party shall be awarded reasonable attorney fees. Kimberly was represented by an attorney who advised her in connection with the negotiation and execution of the prenuptial agreement.

The parties married on July 4, 1998. In 2005, Kimberly filed a petition for dissolution in the Orange County Superior Court. In December 2006, Fletcher and Kimberly entered into a marital settlement agreement in Nevada. By that time, they had two children. The marital settlement agreement ratified the prenuptial agreement. The marital settlement agreement was entered into because the parties stated irreconcilable differences had arisen between them and "they are now incompatible in marriage." The agreement stated the only community property, or property jointly owned by the parties, was a condominium, and Fletcher agreed to pay Kimberly $1.7 million for her share in the condominium. The attorney fee provision in this agreement provided Fletcher would pay Kimberly's attorney fees incurred in negotiating and executing the agreement "and the attainment of a divorce in an amount not to exceed . . . $200,000." The agreement further stated it would remain in effect (other than the support obligations of Fletcher) even if the parties reconciled. The agreement expressly provided it would be governed by the laws of Nevada. The parties chose the Eighth Judicial District Court of the State of Nevada as the forum and venue for their divorce proceeding and Kimberly agreed to dismiss her Orange County Superior Court petition for dissolution. The parties reconciled after signing the marital settlement agreement.

3

On January 1, 2007, the parties entered into a postmarital agreement. The purpose of which was "to establish additional financial obligations and rights, arising out of their marital relationship, which are in addition to those financial obligations and rights" set forth in the prenuptial and marital settlement agreements. The parties ratified and affirmed the prenuptial and marital settlement agreements. Kimberly was again represented by independent counsel. The postmarital agreement revoked Kimberly's waiver of alimony and/or spousal support in the marital settlement agreement. The postmarital agreement contained a provision providing that if a provision in the postmarital agreement conflicts with the prenuptial agreement, the terms of the postmarital agreement prevail, and a similar clause concerning any conflict between the postmarital agreement and the marital settlement agreement. Additionally, the postmarital agreement contained an attorney fee provision. It provided that if either party thereafter filed for divorce or dissolution of marriage, Fletcher would pay Kimberly $100,000 "as a predistribution to be credited against any attorneys' fees, expert fees and any related litigation costs and expenses, which may be awarded to Kimberly by the court and *without prejudice to Kimberly seeking additional attorneys' fees*, expert fees and related costs and expenses *from the court in which the divorce or dissolution action is pending*." (Capitalization omitted, italics added.)

The parties separated on November 9, 2011. Kimberly filed a petition for dissolution, and on January 31, 2012, Fletcher filed his response. On November 29, 2012, the superior court granted Fletcher's request and terminated the marital status. The court reserved jurisdiction over all remaining issues. In his request for admissions, Fletcher sought to determine whether Kimberly contested the three agreements and their enforceability. Kimberly did not admit the agreements were valid and enforceable. Indeed, she specifically denied the validity of the prenuptial agreement.

4

On October 4, 2012, Fletcher initiated a declaratory relief action in Nevada, apparently because Kimberly would not admit the agreements were valid and enforceable. Kimberly appeared in the Nevada action and opposed Fletcher's complaint. On December 10, 2013, the Nevada court issued a decision and order granting Fletcher summary judgment on the issues of the validity and enforceability of the agreements. The court found Fletcher submitted sufficient evidence that Kimberly challenged the validity of the agreements and that a reporter's transcript of the July 1, 1998 execution of the prenuptial agreement "clearly reflects [Kimberly's] participation in the drafting of the Agreement and her relationship with her attorney at that time." The court found the agreements were valid and enforceable, and Fletcher, the prevailing party, was entitled to attorney fees. The remaining issues in the Nevada action involve specific performance and "any outstanding claims that have been pled in the complaint." (Capitalization omitted.)

A week before the Nevada court granted summary judgment on the validity of the prenuptial agreement, Kimberly filed a motion for attorney fees in the superior court. She sought $1 million in attorney fees "on account of attorney fees and costs estimated to be incurred in connection with the related action [Fletcher] filed in Nevada . . . ." Fletcher had already paid Kimberly $3,126,824 in attorney fees and costs in the dissolution matter. At the hearing on Kimberly's motion, the court stated it would award $375,000 attorney fees to Kimberly "under [Family Code section] 2030 to ensure that each party has access to legal representation *during the dissolution proceeding.*" (Italics added.) The January 24, 2014, minute order states the court awarded Kimberly

"$375,000 as and for attorney fees pursuant to [Family Code section] 2030 based on the complexity of *this case*." (Italics added.) Fletcher appealed.[2]

II

DISCUSSION

Kimberly requested $1 million in attorney fees so she could defend the Nevada action. Fletcher contends the trial court erred as a matter of law in awarding Kimberly $375,000 in attorney fees to litigate the Nevada action. First, he argues the statute under which the attorney fees were ordered (Fam. Code, § 2030; all undesignated statutory references are to the Family Code) does not apply because the Nevada action is not "related" to the dissolution action as required by section 2030. Next, he claims the award undercut a contrary ruling by the Nevada court. He also claims comity required the superior court to deny Kimberly's request. Lastly, he asserts Kimberly had ample resources with which to retain counsel in the Nevada action.

An order granting or denying attorney fees pendente lite is appealable. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368-370.) A trial court's decision concerning the award of attorney fees in a marital dissolution matter is left to the court's sound discretion. (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769.) Accordingly, we must affirm a trial court's order absent an abuse of discretion. (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 345.) An abuse of discretion is present if "'no judge reasonably could'" have made the order. (*Ibid*., quoting *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 829.)

---

[2] Fletcher asks us to take judicial notice of the subsequent September 24, 2014 Nevada judgment in his favor. (See Cal. Rules of Court, rule 8.252(a)(2).) Because the Nevada judgment was entered more than nine months *after* the superior court's order in this matter and could not have affected the superior court's decision, we decline the invitation.

6

A. *Kimberly's Financial Resources*

Section 2030 authorizes the trial court to order one party to pay the attorney fees of the other party when there exists a "disparity in access to funds to retain counsel." (§ 2030, subd. (a)(2).) "In a proceeding for dissolution of marriage . . . and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).) When a party seeks attorney fees and costs under section 2030, the court is required to make an order for one spouse to pay all or a part of the other spouse's attorney fees if the court finds an award is appropriate because its "findings demonstrate disparity in access and ability to pay." (§ 2030, subd. (a)(2).)

Section 2030's purpose "is not the redistribution of money from the greater income party to the lesser income party," but to provide "parity: a fair hearing with two sides equally represented." (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 251.) "The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subd. (b).)

Although Kimberly is by all accounts wealthy, her wealth does not compare to Fletcher's. Just as a spouse who is not wealthy may be entitled to have his or her attorney fees paid by a financially better off spouse (§ 2030, subd, (a)(1)) so the parties

7

have similar abilities to retain counsel and litigate issues, a wealthy spouse may be entitled to have the other, much more substantially wealthy spouse, pay his or her attorney fees to ensure parity in very expensive litigation. In determining whether to order one spouse to pay the other's attorney fees, the trial court must determine "whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the finding demonstrates disparity in access and ability to pay, the court *shall* make an order awarding attorney's fees and costs." (§ 2030, subd. (a)(2), italics added.)

The present case is a prime example. Although Kimberly purportedly has substantial assets, Fletcher's wealth dwarfs Kimberly's. Additionally, the fees incurred by the attorneys in the Orange County dissolution action and the Nevada action are substantial. According to declarations submitted in support of the motion for attorney fees, Kimberly's attorney estimated fees and costs in defending the Nevada action would be $1 million. Attorney Kolodny stated his hourly rate was $950 an hour, but he was charging Kimberly $900 an hour.[3] According to her schedule of assets and debts, if Kimberly is required to pay $1 million in attorney fees to defend the Nevada action, she might be required to liquidate certain assets, with more costs and fees to follow. The same cannot be said about Fletcher should he be required to pay the fees ordered by the superior court. Moreover, Fletcher's income and his access to liquid assets exponentially exceeds Kimberly's. He is clearly in a much better financial position to pay the attorney fees. It cannot be gainsaid that proportionately it would be much more costly for Kimberly to litigate the Nevada action that it would for Fletcher. Thus, the mere fact that Kimberly had assets from which she *could* pay her attorneys does not preclude the court from ordering Fletcher to pay a portion of her attorney fees. We conclude the superior court did not abuse its discretion in implicitly finding there exists a disparity in access

---

[3] Fletcher's attorneys are paid $305 to $800 an hour.

8

and ability to pay for attorney fees. (§ 2030, subd. (a)(2); see *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1046, fn. 4 [we presume "'the court found every fact necessary to support its order that the evidence would justify'"].)

B. *Related Proceedings*

The court's authority to require one spouse to pay the attorney fees of the other spouse under section 2030 includes situations where the "attorney's fees and costs . . . may be reasonably necessary for the prosecution or defense of the [dissolution] proceeding, *or any proceeding related thereto*, including after any appeal has been concluded." (§ 2030, subd. (c), italics added.) Fletcher argues the Nevada action was not "related" to the dissolution action because the Nevada action was not "a rerun of the family law case" and the issues in the Nevada action "could not and should not" have been raised in the dissolution matter. We are not persuaded.

As Fletcher correctly points out, section 2030 does not define "related." "'[R]elatedness' is normally a factual question for the trial court . . . ." (*Askew v. Askew* (1994) 22 Cal.App.4th 942, 964.) A related action need not have been brought as the result of an improper motive on the plaintiff's part. (*Id*. at p. 965.) At a minimum, a civil action is related to the family law matter "if it involves matters which should have been litigated in the family law action in the first place. [Citations.]" (*Ibid*.)

Fletcher, quoting *Neal v. Superior Court* (2001) 90 Cal.App.4th 22, 25, argues "civil actions which are nothing more than reruns of a family law case" are one category of "related" proceedings. The *Neal* court observed that even if a family law matter may be involve issues of fraud, malicious prosecution, or securities fraud, such matters should not spill over into civil law. (*Ibid*.) Consequently, the court held it "incumbent" for courts "to examine the substance of claims, not just their nominal headings." (*Ibid*.) In *Neal*, the husband's civil suit alleging the wife breached a

9

settlement reached in the family law matter was *related* to the family law matter and the trial court was directed to make an appropriate award to wife for her attorney fees incurred in the husband's separate civil action. (*Id*. at pp. 26-27.) While a lawsuit that is nothing more than a rerun of a family law matter is related to the family law matter for purposes of section 2030, *Neal* does not hold such a rerun is a prerequisite to finding a civil action is related to a dissolution matter.

Fletcher claims the cause of action underlying the Nevada action should not and indeed, "could not" have been brought in the dissolution proceeding because the property agreements contained provisions requiring any action involving the validity of the agreements be brought in Nevada. *In re Marriage of Seaman & Menjou* (1991) 1 Cal.App.4th 1489, the husband contended the family law court erred in ordering him to pay his spouse's attorney fees in a juvenile court action under Welfare and Institutions Code section 300. (*In re Marriage of Seaman & Menjou*, *supra*, 1 Cal.App.4th at p. 1493.) The appellate court stated the issue was whether the trial court in the family law matter had jurisdiction to order the husband to pay his wife's attorney fees in defending a dependency proceeding in the juvenile court action. (*Ibid*.) The appellate court noted that "[s]ince a proceeding under Welfare and Institutions Code section 300 falls under the Juvenile Court Law rather than the [Family Law Act], an award of fees . . . is appropriate in the present case only if the dependency proceeding may be considered 'related' to the dissolution action under the [Family Law Act]." (*Id*. at p. 1494, fn. omitted.)

There was little in the way of case law to guide the court's decision in *Seaman & Menjou*. The appellate court concluded existing case law did not provide guidance for an interpretation of "related." Rather, prior cases "simply [made] judgment calls as to whether the particular actions involved were 'related' to the underlying divorce." (*In re Marriage of Seaman & Menjou*, *supra*, 1 Cal.App.4th at p. 1495.) The court concluded the answer to the question turns "on whether an award of fees in the

10

non-[Family Law Act] proceeding would serve the purpose of" [the statute authorizing an award of attorney fees to a spouse].)  (*Id*. at p. 1496.)

The purpose of section 2030 is to provide """"at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses in their ability to obtain effective legal representation."'  [Citation.]"  (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866.)   While a *rerun* of a family law matter is related to the underlying family law matter (*Neal v. Superior Court*, *supra*, 90 Cal.App.4th at pp. 25-27), the test is "whether an award of fees in the non-[Family Law Act] proceeding would serve the purpose" of section 2030.  (*In re Marriage of Seaman & Menjou*, *supra*, 1 Cal.App.4th at p. 1496 [applying fee provision in Civ. Code former section 4370].)  That purpose is to assure each party has """"access to legal representation in order to preserve all his or her rights."'  [Citations.]"  (*Id.* at pp. 1496-1497.)

Trial courts in family law actions routinely resolve not only the marital status of the parties, but also issues of child support, custody of children, community debt, division of community assets, and attorney fees.  (See *In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1515; *Nicholson v. Fazeli* (2003) 113 Cal.App.4th 1091, 1094.)  A court hearing a dissolution matter has jurisdiction "to award community estate assets or community estate liabilities to the parties *that have not been previously adjudicated by a judgment in the proceeding*."  (§ 2556, italics added.)  It is thus apparent the trial court would ordinarily have jurisdiction to determine what property was Fletcher's separate property, Kimberly's separate property, and what property belonged to the community.

The property agreements "required" the action be brought in Nevada, as Fletcher asserts.  That, however, is not dispositive of the whether the Nevada action was related to the Orange County dissolution proceeding and whether requiring Fletcher to contribute toward Kimberly's attorney fees fulfills the purpose of section 2030.  The

11

Nevada action concerned the division of property owned by the parties and to be divided as a result of the dissolution. Given the three agreements litigated in Nevada had to do with the division of property, an issue routinely decided in dissolution cases and one that directly affects the issue of child support, and the marital settlement agreement also contained a provision concerning child support, the trial court did not err in impliedly finding the Nevada action is related to the dissolution action for purposes of section 2030.

If Kimberly had to pay all the fees and costs estimated to be incurred by her attorneys in the Nevada action (purportedly $1 million), she might be forced to liquidate some of her assets. That same expense, however, would not impact Fletcher in the same fashion, even were we to assume he did not have sufficient *income* to cover the expense, an assumption we cannot make in this case given his financial statement.

Resolution of this issue did not require the superior court to determine whether Fletcher initiated the Nevada action in an effort to gain an unfair advantage in the family law matter. While such a motive may be sufficient to establish the Nevada action was related to the family law matter, it is not necessary to such a finding. (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 401, fn. 4.) Because we conclude the awarded attorney fees fulfilled the purpose of section 2030 and the Nevada action was brought to litigate issues normally resolved in a family law matter, we find the Nevada action was related to the family law matter and did not preclude the superior court from awarding Kimberly attorney fees.

Flectcher's reliance on *In re Marriage of Seaman & Menjou*, *supra*, 1 Cal.App.4th 1489, is misplaced. There, the husband and wife were going through dissolution of their marriage and a juvenile court dependency action involving their two children. (*Id*. at p. 1492.) Wife's attorney filed a motion seeking to have husband ordered to pay her attorney fees in the juvenile dependency matter. (*Id*. at p. 1493.) The court noted the applicable attorney fee statute (Civ. Code, former § 4370) would permit

12

the court to order the husband to contribute to wife's attorney fees in the dissolution matter only if the dependency action was "related" to the dependency matter. (*In re Marriage of Seaman & Menjou*, *supra*, 1 Cal.App.4th at p. 1497.) The appellate court held the statute "enables a trial court to ensure that an appropriate degree of financial parity between the parties is not lost by a party's litigation of matters that *could have been part of the* [dissolution] action in an independent suit. [Citation.]" (*Ibid*., italics added.) A dependency action is instituted by the state to protect children and "there is no inherent link between" a dependency action and a dissolution action. (*Id.* at p. 1498.) But there is such a link between a dissolution action, and an action involving division of the parties' property, separate and community.

We reject Fletcher's contention that the agreements *could not* have been litigated in California because the agreements provide they must be litigated in Nevada. California would not have been without jurisdiction to determine the validity and enforceability of the agreements had both parties waived the provision requiring any action involving the agreements be filed in Nevada. California is quite capable of applying a sister state's law to an agreement entered into in that sister state. Additionally, it appears Fletcher would not have brought any action to declare the agreements valid and enforceable had Kimberly admitted the validity and enforceability of the agreements in discovery conducted in the dissolution matter. Had Kimberly not contested the agreements, it appears Fletcher would have been satisfied with the superior court eventually entering orders dividing the property pursuant to the agreements. After all, he alleged he only brought the Nevada action because Kimberly would not concede in the dissolution matter the validity and enforceability of the agreements. Thus, the substance of the agreements "could have been part of the" dissolution action.

## C. *Prevailing Party Fee Provision*

Fletcher further argues the trial court abused its discretion in ordering him to pay Kimberly's attorney fees because the property agreements contain fee-shifting clauses whereby the losing party is obligated to pay the prevailing party's attorney fees. The prenuptial agreement contains an attorney fee clause whereby the parties "waive the right to seek interim or pendente lite fees alone, and may only be awarded such fees if they prevail on a specific claim for relief."

The marital settlement agreement ratified and reaffirmed the terms of the prenuptial agreement to the extent the marital settlement agreement is not contrary to any term in the prenuptial agreement. If the marital settlement agreement conflicted with or was contrary to a provision in the prenuptial agreement, the marital settlement agreement would prevail. This agreement contained a provision for the payment of attorney fees in the event of a subsequent dissolution action: "Husband agrees to pay Wife . . . the sum of two hundred thousand dollars ($200,000.00). Wife shall be responsible for all other fees and costs in excess of that amount." (Capitalization omitted.) The marital settlement agreement further provided that if the parties reconcile, the agreement is to "continue in full force," until the agreement "is modified or abrogated by another written instrument to that effect and signed and acknowledged by each of the parties." According to paragraph 7.17 of the marital settlement agreement, the prevailing party is entitled to attorney fees in any action involving the validity or enforceability of the agreement. The agreement also contained a provision whereby the agreement is to be construed according to the laws of Nevada and that the parties choose Nevada as the forum and venue for their then pending divorce proceedings.

The postmarital agreement confirmed the two earlier agreements and provided it prevails over the prenuptial and marital settlement agreements to the extent it is contrary to or in conflict with any provision in those agreements. The attorney fee

14

provision of the postmarital agreement conflicts with those contained in the prenuptial agreement and the marital settlement agreement. It provides: "In the event either party should file for divorce or dissolution and serve the other party, [Fletcher] agrees to pay Kimberly $100,000 within 10 business days of such filing, as a predistribution to be credited against any attorney's fees, expert fees and any related litigation costs and expenses, which may be awarded to Kimberly by the court and *without prejudice to Kimberly seeking additional attorney's fees, expert fees and related costs and expenses from the court in which the divorce or dissolution action is pending.*" (Capitalization omitted, italics added.) The attorney fee provision of the postmarital agreement specifically requires Fletcher to contribute toward Kimberly's attorney fees and anticipates a further award of attorney fees to Kimberly by the court hearing the dissolution matter. That being the case, the prenuptial, property settlement, and postmarital agreement did not divest the superior court of its jurisdiction to order Fletcher to contribute to Kimberly's attorney fees.

D. *Comity Does Not Require a Different Result.*

Lastly, Fletcher urges that comity required the superior court to deny Kimberly's request for attorney fees so as not to interfere with or negate the Nevada court's order directing Kimberly to pay for Fletcher's attorney fees in litigating the issue of the validity and enforceability of the prenuptial, marital settlement, and postmarital agreements. As noted above, by the time the superior court ruled on Kimberly's attorney fee request, the Nevada court had issued a decision granting Fletcher partial summary judgment. The Nevada court found the agreements are valid and enforceable. It stated the matter would proceed to trial on the issue of specific performance and any other issue presented by the complaint. The court then concluded Fletcher was entitled to his attorney fees.

15

"Comity is based on the belief ""that the laws of a state have no force, *proprio vigore*, beyond its territorial limits, but the laws of one state are frequently permitted by the courtesy of another to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law. This courtesy, or comity, is established, not only from motives of respect for the laws and institutions of the foreign countries, but from considerations of mutual utility and advantage.'" . . . "The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids.'" [Citations.]" (*Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 707.)

Comity did not require the superior court to refrain from ordering an award of pendente lite attorney fees to Kimberly. The superior court's order does not affect the Nevada court's partial summary judgment finding the agreements are valid and enforceable, or that portion of the order awarding Fletcher attorney fees as the prevailing party. Those rulings remain in effect. As of the time the superior court pendente lite order directing Fletcher to pay a portion of Kimberly's attorney fees in the Nevada action, the Nevada court had not resolved all the issues in that case, including attorney fees on the issues remaining in the Nevada action; it had only found the agreements valid and enforceable, and that Fletcher was entitled to attorney fees in connection with the partial summary judgment. Other issues remained for trial. Because the superior court's order did not negate or restrict the Nevada partial summary judgment and orders, comity does not require the setting aside of the superior court's order.

E. *Conclusion*

Fletcher has not demonstrated the superior court abused its discretion in this matter. Accordingly, the order is affirmed. As Kimberly points out, notwithstanding

16

the prevailing party language in an attorney fee, the postmarital agreement stated Kimberly could apply seek attorney fees "from the court in which the dissolution action is pending." We conclude Fletcher has failed to demonstrate the court abused its discretion in awarding Kimberly attorney fees pendente lite.

## III

## DISPOSITION

The order of the superior court awarding Kimberly attorney fees is affirmed. Kimberly shall recover her costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.